## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL S. PENNACHIETTI,

*Plaintiff*,

v.

CRAIG MANSFIELD,

*Defendant*.

CIVIL ACTION
NO. 17-02582

**PAPPERT, J.**                                            **December 11, 2017**

## MEMORANDUM

Daniel Pennachietti received an allegedly usurious loan through an internet website operated by Sovereign Lending Solutions, LLC, a title lending company established under the tribal law of the Lac Vieu Desert Band of Lake Superior Chippewa Indians. (Compl., at 1–2, ECF No. 1.) Pennachietti has not sued the Chippewa Tribe or Sovereign. Instead, he has sued Craig Mansfield, "a manager in charge of day-to-day operations" at Sovereign. (Ex. P-2, at 2, ECF No. 1-1.) Mansfield moves to dismiss the Complaint pursuant to Rules 8(a)(1), 12(b)(1), 12(b)(2), and 12(b)(3) of the Federal Rules of Civil Procedure.[1] (Def.'s Mot. to Dismiss, at 10, 11, 16, 22, ECF No. 5.) For the reasons that follow, the Court denies Mansfield's Motion.

---

[1]    Mansfield argues that his Motion should be granted under Rule 8(a)(1) because Pennachietti failed to attach to his Complaint the loan agreement, and thus fails to allege grounds for this Court's jurisdiction or his entitlement to relief. (Def.'s Mot. to Dismiss, at 10.) Although Pennachietti did not attach the loan agreement, accepting his allegations as true and construing disputed facts in his favor, Pennachiett has alleged sufficient grounds for this Court's jurisdiction, *see infra* Part III, and that he may be entitled to relief.

I

In July 2013, Pennachietti borrowed $5,050.00 from Sovereign.  (Compl., at 3.)

He submitted his loan application online through "Title Loan America," a website

operated by Sovereign.  (*Id.*, Ex. P-1.)  Pennachietti does not recall seeing or accepting

any particular terms or conditions at the time he took the loan, and he was not

provided a copy of the loan agreement.  (*Id.* at 3–4.)  Over the next year, Pennachietti

made payments to Sovereign totaling $6,301.68.  (*Id.* at 4.)  He was late making the

final, or "balloon" payment for the outstanding balance on the loan, and Sovereign had

his car was repossessed.  (*Id.*)  Sovereign demanded $7,000.00 from Pennachietti to get

his car back, which he paid in two installments in August and October of 2014.  (*Id.*)

Pennachietti filed his Complaint against Mansfield on June 8, 2017, alleging violations

of the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962(c)–(d) (*id.* at 5–9), and a violation of Pennsylvania's Loan Interest and Protection

Law, 41 Pa. Cons. Stat. §§ 201, 502–504 (*id.* at 9–10).

In Count One, Pennachietti alleges Mansfield violated 18 U.S.C. § 1962(c), which

makes it a crime for "any person employed by or associated with an enterprise engaged

in, or the activities of which affect, interstate…commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity…."  Pennachietti identifies Sovereign as the RICO enterprise,

Mansfield as a prior manager of Sovereign, and alleges Mansfield conducted or

participated in the enterprise's affairs by directing Sovereign to collect unlawful debt

from citizens of Pennsylvania, including Pennachietti.  (Compl., at 6–7.)  In Count Two,

Pennachietti alleges Mansfield violated 18 U.S.C. § 1962(d), which provides that "[i]t

2

shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Pennachietti contends Mansfield violated § 1962(d) by conspiring with other individuals to operate an enterprise and collect unlawful debt from Pennsylvania borrowers. (*Id.* at 8.) In Count Three, Pennachietti alleges Mansfield collected interest above the statutory annual maximum of six percent, in violation of the Loan Interest and Protection Law. (*Id.* at 9.) Mansfield argues that the Complaint should be dismissed because he enjoys tribal sovereign immunity and that this Court lacks personal jurisdiction over him.

## II

Courts address issues of tribal sovereign immunity pursuant to motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.,* 264 F.3d 1297, 1302–03 (10th Cir. 2001) ("Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1)")); *cf. United States v. Gov't of Virgin Islands,* 363 F.3d 276, 284 (3d Cir.2004) ("Eleventh Amendment immunity is relevant to jurisdiction...."). A motion to dismiss for lack of subject matter jurisdiction may be asserted as either a facial or factual attack. A facial attack challenges the sufficiency of the complaint because of a defect on its face, and the court "must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack, the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Because Mansfield presents a factual attack, the Court may consider evidence

outside the pleadings, and no presumptive truthfulness attaches to Pennachietti's allegations. *See id.*

Mansfield contends that he is entitled to tribal sovereign immunity because he acted within the scope of his employment and in his official capacity as manager at Sovereign, and thus Sovereign is the real party in interest. (Def.'s Mot. to Dismiss, 13–16.)

A

In *Lewis v. Clarke*, 137 S.Ct. 1285 (2017), the most recent United State Supreme Court case to address tribal sovereign immunity, the Court held that "[i]n a suit brought against a tribal employee in his individual capacity, the employee… is the real party in interest and the tribe's sovereign immunity is not implicated." 137 S.Ct. at 1288. Brian and Michelle Lewis were driving on an interstate highway when William Clarke, an employee of the Mohegan Tribe of Indians of Connecticut transporting Mohegan Sun Casino patrons, struck their car. *Id.* at 1286. The plaintiffs sued Clarke in his individual capacity in state court, and Clarke moved to dismiss the case for lack of subject-matter jurisdiction, arguing that he was entitled to tribal sovereign immunity because he was acting within the scope of his employment at the time of the accident. *Id.* The trial court denied Clarke's motion because "the damages remedy sought was solely against [the defendant] and would in no way affect the Tribe's ability to govern itself independently." *Id.* at 1289. The Supreme Court of Connecticut reversed, holding that "tribal sovereign immunity barred the suit because [the defendant] was acting within the scope of his employment when the accident occurred." *Id.* The Court reasoned that "plaintiffs cannot circumvent tribal immunity by merely naming the

defendant, an employee of the tribe, when the complaint concerns actions taken within the scope of his duties….” *Id.* (quoting *Lewis v. Clarke*, 320 Conn. 706, 717 (2016)).

The United States Supreme Court reversed, holding that tribal sovereign immunity is not implicated in a suit brought against a tribal employee in his individual capacity because the employee is the real party in interest. *Id.* at 1288. That the defendant “was acting within the scope of his employment…is not, on its own, sufficient to bar a suit against that employee on the basis of sovereign immunity.” *Id.* Instead, courts must determine whether tribal sovereign immunity applies by evaluating the principles of common-law sovereign immunity to decide “whether the sovereign is the real party in interest….” *Id.* at 1290.

The Court explained that common-law sovereign immunity distinguishes between individual and official capacity suits when determining the real party in interest. *Id.* at 1291. In an official capacity claim, “the relief sought is only nominally against the official and in fact is against the official’s office and thus the sovereign itself.” *Id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). Because official capacity claims are essentially actions against the sovereign, the sovereign is the real party in interest and immunity may be asserted. *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

Personal capacity suits, however, “seek to impose *individual* liability upon a government officer for actions taken under color of state law.” *Lewis*, 137 S.Ct at 1291 (emphasis added) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Upon taking office, newly elected Pennsylvania Auditor General Barbara Hafer fired eighteen employees who she believed obtained their positions by paying a former employee of the Auditor

General's office. The employees sued Hafer in her personal capacity, seeking money damages under 42 U.S.C. § 1983. *Hafer*, 502 U.S. at 21. Hafer argued that she was entitled to sovereign immunity because "liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff." *Id.* at 27. The Court rejected this argument, reasoning that "officers sued in their personal capacity come to court as individuals," and "may be held personally liable for damages…based upon actions taken in their official capacities." *Id.* at 21, 27. Individuals are the real party in interest where the plaintiff "seeks to impose personal liability upon an individual [to] recover from the personal assets" of that individual, and sovereign immunity is not implicated because the sovereign is not the real party in interest. *Garden State Electrical Inspection Services, Inc. v. Levin*, 144 Fed. Appx. 247, 251 (3d Cir. 2005); *cf. Carter v. City of* Philadelphia, 181 F.3d 399, 347–48 (3d Cir. 1999) (whether sovereign immunity applies, "the source of funding—*i.e.*, whether payment of any judgment would come from the state's treasury," is "the most important factor to be consider" and is generally accorded "dispositive weight").

B

Mansfield first contends that he is not the real party in interest because he acted within the scope of his employment as manager at Sovereign, and "Pennachietti *never* alleged that Mansfield acted independently to incur individual liability…." (Def.'s Mot. to Dismiss, at 14.) For his part, Pennachietti alleges that Mansfield is liable for participating and directing the conduct of Sovereign's affairs and engaging in conduct which occurred while he was acting within the scope of his employment as manager of Sovereign. Both arguments miss the mark; Mansfield acting within the scope of his

employment does not determine whether he or Sovereign is the real party in interest. *See Lewis*, 137 S.Ct. at 1288. This is a personal capacity suit to recover money damages solely from Mansfield for his personal actions, and extending tribal sovereign immunity to him simply because he was acting within the scope of his employment would extend that immunity beyond what common-law sovereign immunity principles would recognize for government employees. *See id.* at 1291–92.[2]

Mansfield also contends that he is not the real party in interest because he only ever acted in his official capacity as manager while employed at Sovereign. (Def.'s Mot. to Dismiss, at 15.) Because he was acting in his official capacity when the loan issued to Pennachietti, Mansfield argues that this is an official capacity suit and that he may not be held personally liable for those actions. That Mansfield was acting in his official capacity, however, does not make this an official capacity suit. Rather, as *Hafer* made clear, what matters is not the capacity in which Mansfield acted while employed by Sovereign, but rather the capacity in which he is currently being sued. *See Hafer*, 502 U.S. at 27. Here, Mansfield was sued in his individual capacity to recover for his actions of participating and directing the conduct of Sovereign's affairs, conspiring to violate § 1962 and collecting usurious interest in excess of six percent annually.

---

[2]     Although Counts One and Two of Pennachietti's Complaint (violations of § 1962(c) and (d)) are substantially different than the negligence claim in *Lewis*, Pennachietti seeks to hold Mansfield responsible for *his own* actions. To state a claim under § 1962(c), "the plaintiff must allege that (1) a person conducted (2) an enterprise through (3) a pattern of (4) racketeering activity." *Kolar v. Preferred Real Estate Investments*, No. 07–3864, 2008 WL 2552860 at *4 (E.D. Pa. June 19, 2008) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Pennachietti asserts that Mansfield, as manager responsible for day-to-day operations at Sovereign, conducted or participated in Sovereign's affairs in a manner forbidden by RICO by collecting unlawful debt from Pennsylvania residents. *See Cedric Kushner Productions, Ltd. V. King*, 533 U.S. 158, 163 (2001). Thus, Pennachietti seeks to hold Mansfield responsible for his own act of conducting or participating in the affairs of Sovereign. *See id.* As to the § 1962(d) claim, Pennachietti alleges Mansfield conspired with other individuals to commit a RICO violation by collecting unlawful debt. Again, Pennachietti seeks to hold Mansfield responsible for his own act of agreeing to commit a RICO violation with other individuals.

Pennachietti seeks to impose personal liability only upon Mansfield. Sovereign has not been named as a defendant, and any judgment against Mansfield will not require action by Sovereign. *See Lewis*, 137 S.Ct. at 1291 (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)). The principles of common-law sovereign immunity typically treat the source of funding as the most important factor to consider when determining whether sovereign immunity applies. Here, any judgment against Mansfield will implicate his personal assets and will not disturb the property or treasury of Sovereign. *See id.*; *see also Carter*, 181 F.3d at 347–48. For these reasons, Mansfield is the real party in interest and he is not entitled to tribal sovereign immunity.

## III

### A

Mansfield also argues that the Complaint should be dismissed because this Court lacks personal jurisdiction over him under Federal Rule of Civil Procedure 12(b)(2). A motion made pursuant to Rule 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). "Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carter et Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). If the Court does "not hold an evidentiary hearing.... the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d

93, 97 (3d Cir. 2004); *see also Time Share*, 735 F.2d at 67 n.9 (once personal jurisdiction

is challenged, "plaintiff must sustain its burden of proof in establishing jurisdictional

facts through sworn affidavits or other competent evidence.").

There are two type of personal jurisdiction: general and specific. General

jurisdiction is proper when a defendant's contacts with the forum state are "continuous

and systematic," whether or not those contacts are related to the plaintiff's cause of

action. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Specific jurisdiction

exists when the "non-resident defendant has 'purposefully directed' his activities at a

resident of the forum and the injury arises from or is related to those activities." *Gen.*

*Elec. Co. v. Deutz*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472 (1985)).

Under Federal Rule of Civil Procedure 4(e), a district court typically exercises

personal jurisdiction according to the law of the state where it sits. *See O'Connor v.*

*Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm

statute permits courts to exercise personal jurisdiction "to the fullest extent allowed

under the Constitution of the United States and . . . based on the most minimum

contact with this Commonwealth allowed under the Constitution of the United States."

42 PA. C.S.A. § 5322(b). To exercise personal jurisdiction over Mansfield, the Court

must therefore determine whether, under the Due Process Clause, Mansfield has

"certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice." *O'Connor*,

496 F.3d at 316–17 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

B

Mansfield avers that this Court lacks personal jurisdiction because he is a resident of Wisconsin, Sovereign was located on Indian lands in Michigan, Sovereign's website did not target any particular state, and the transaction between Pennachietti and Sovereign was consummated in Michigan. (Def.'s Mot. to Dismiss, 18–19.) This Court has personal jurisdiction over Mansfield because he oversaw Sovereign's purposeful direction of activities to Pennsylvania residents, those actives serve as the basis of this lawsuit, and the exercise of jurisdiction over Mansfield comports with fair play and substantial justice based on his contacts with the forum.

Specific jurisdiction does not require physical presence in the forum state, but is instead established when a defendant reaches out beyond his own state to "create continuing relationships and obligations with citizens of another state." *Burger King*, 417 U.S. at 473. Contemporary business relationships are typically developed through electronic communication, *Deutz*, 270 F.3d at 150, and "[w]here these types of long-term relationships have been established, actual territorial presence become less determinative," *id.* (citing *Burger King*, 417 U.S. at 476). When commercial activity occurs over the internet, as here, the plaintiff must show that "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

Mansfield oversaw the loan application process by which long-term relationships were created between Sovereign and Pennsylvania residents. Sovereign directed

consumers to fill out a loan application online and electronically sign that document. (Ex. 1, at 2–3, ECF No. 7-1.) Sovereign then transferred funds to the consumer's bank account, secured the loan with the consumer's car title, and filed a lien on the car with the Pennsylvania Department of Transportation ("PennDOT"). (*Id.*) Acting as manager of Sovereign, Mansfield used this process to develop continuing relationships with citizens of Pennsylvania, including Pennachietti.

Although the loan application process occurred online, Mansfield purposefully availed himself of the forum by conducting activity in Pennsylvania and knowingly interacting with Pennsylvania residents via the website. Mansfield knowingly interacted with Pennsylvania residents; by July 2015, PennDOT had 371 liens registered in the name of Sovereign, thus invoking the benefits and protections of Pennsylvania laws. (*Id.*) Although Mansfield's employment with Sovereign purportedly ended in 2014, during his time as manager he oversaw Sovereign's use of the website to intentionally interact with Pennsylvania residents and execute loans, including the loan Pennachietti took out in July 2013.[3]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] That this Court has personal jurisdiction also supports denying the Motion to Dismiss for improper venue. Mansfield argues that because "there is no personal jurisdiction over [him], venue is improper under Fed. R. Civ. P. 12(b)(3)." (Def.'s Mot. to Dismiss, at 22.) Since "a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense," the burden of proving improper venue is on the moving party. *Myers v. Am. Dental Ass'n*, 695 F.3d 716, 724 (3d Cir. 1983). Because this Court has personal jurisdiction over Mansfield, he as the moving party failed to satisfy his burden of proving improper venue.